# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michele Z.,
                                      Case No. 21-cv-661 (KMM/TNL)

         Plaintiff,

v.                                      **REPORT & RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security, [1]

         Defendant.

---

David F. Chermol, Chermol & Fishman LLC, 11450 Bustleton Avenue, Philadelphia, PA 19116, and Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 890, Minneapolis, MN 55401 (for Plaintiff); and

Michael Moss, Special Assistant United States Attorney, Social Security Administration, 1301 Young Street, Suite 350, Mailroom 104, Dallas, TX 75202 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Michele Z. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.*

This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment, Plaintiff's Motion for Summary Judgment, ECF No. 19, and the Commissioner's Motion for Summary Judgment, ECF No. 22. These motions have

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

been referred to the undersigned for a report and recommendation to the district court, the Honorable Katherine M. Menendez, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, ECF No. 19, be **GRANTED IN PART** and **DENIED IN PART**; the Commissioner's Motion for Summary Judgment, ECF No. 22, be **GRANTED IN PART** and **DENIED IN PART**; and this matter be remanded to the Social Security Administration for further proceedings consistent with this opinion.

## II. PROCEDURAL HISTORY

On April 24, 2019, Plaintiff applied for DIB and SSI asserting that she has been disabled since October 2018 due to bipolar disorder, depression, OCD, and left upper arm pain. Tr. 15, 207-13, 218-28. Plaintiff's applications were denied initially and again upon reconsideration. Tr. 15, 65-124.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ"). Tr. 15, 150-51. The ALJ held a hearing in August 2020, and issued an unfavorable decision. Tr. 15-31. After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-6.

Plaintiff then filed the instant action, challenging the ALJ's decision. Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 19, 22. This matter is now fully briefed and ready for a determination on the papers.

### III. SEPARATION OF POWERS

As an initial matter, Plaintiff asserts that the structure of the Social Security Administration is "constitutionally invalid," and "the appointment of Andrew Saul as a single Commissioner of the Social Security Administration (SSA), who was removable only for cause and would serve a longer term than that of the President, violates separation of powers." Pl.'s Mem. in Supp. at 10, ECF No. 20 (cleaned up). Because "[t]he ALJ's delegation of authority in this case came from Mr. Saul," Plaintiff argues that the ALJ's decision is "constitutionally defective." *Id*. at 11. Plaintiff further argues that "the ALJ decided this case under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules" and therefore "a presumptively inaccurate legal standard was utilized to adjudicate this disability claim at the administrative level." *Id*. Plaintiff requests that this case be "remanded for a *de novo* hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." *Id*. at 13.

"Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3)." *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993, 1001 (W.D. Wa. 2021). Under § 902(a)(3), the Commissioner serves a term of six years and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." The Commissioner concedes, and courts have found, that "§ 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause" following the Supreme Court's decisions in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and

*Collins v. Yellen*, 141 S. Ct. 1761 (2021).  Comm'r's Mem. in Supp. at 7, ECF No. 23; *see* Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021) ("In light of the Court's reasoning in *Collins* and *Seila Law*, we have reexamined the constitutional concerns that we previously raised about the Commissioner's protection from removal when Congress enacted the provision in 1994.  We believe that the best reading of those decisions compels the conclusion that the statutory restriction on removing the Commissioner is unconstitutional."); *see, e.g.*, *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) ("The removal provision violates separation of powers principles.  For the purpose of the constitutional analysis, the Commissioner of Social Security is indistinguishable from the Director of the [Federal Housing Finance Agency] discussed in *Collins* and the Director of the [Consumer Financial Protection Bureau] discussed in *Seila Law*."); *Lisa Y.*, 570 F. Supp. 3d at 1001 ("A straightforward application of *Seila Law* and *Collins* dictates a finding that § 902(a)(3)'s removal provision violates separation of powers.  As in *Seila Law* and *Collins*, the Social Security Commissioner is a single officer at the head of an administrative agency and removable only for cause.  *See* 42 U.S.C. § 902(a)(3).  Section 902 thus has the same infirmity as the removal provisions at issue in *Seila Law* and *Collins*.").

But "[t]he Supreme Court held in *Collins* that an unconstitutional removal provision does not affect the *authority* of the underlying agency officials to act." *Kaufmann*, 32 F.4th at 849.

In *Collins*, the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her alleged harm. The Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment" and that "the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void."

*Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021) (alteration in original) (citations omitted). Thus, "an officer properly appointed may exercise the authority of his office even though the statute purports to grant him unconstitutional removal protections." *Andre J. B. v. Kijakazi*, No. 20-cv-2320 (SRN/HB), 2022 WL 2308961, at *12 (D. Minn. June 6, 2022); *see Jean P. v. Kijakazi*, No. 8:21-CV-200, 2022 WL 1505797, at *13 (D. Neb. May 12, 2022) ("Even assuming the unconstitutionality of § 902(a)(3)'s removal provision, then-Commissioner Saul was permitted to undertake the responsibilities of his office, including the delegation of power to the ALJ and Appeals Council to decide cases." (footnote omitted)); *see also Collins*, 141 S. Ct. at 1788 n.23. Here, Plaintiff bases her constitutional challenge on the propriety of § 902(a)(3). She "does not dispute that the ALJ, the members of the Appeals Council, Acting Commissioner Berryhill, and Commissioner Saul, all served, at all relevant times, under valid appointments." *See Kaufmann*, 32 F.4th at 849. Accordingly, Plaintiff's assertion that the ALJ was without "lawful authority" to decide this case is without merit. *See* Pl.'s Mem. in Supp. at 13; *see, e.g.*, *Kaufmann*, 32 F.4th at 849; *Hernandez v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02070-PHX-JAT, 2022 WL 2286801, at *4 (D. Ariz. June 23,

2022); *Brown v. Kijakazi*, No. 1:20-CV-1035, 2022 WL 2222683, at *14-16 (M.D. N.C. June 21, 2022); *Andre J.B.*, 2022 WL 2308961, at *12; *Jean P.*, 2022 WL 1505797, at *13; *Lisa D. v. Kijakazi*, No. 8:21-CV-294, 2022 WL 952778, at *7 (D. Neb. Mar. 30, 2022); *Nudelman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan, 11, 2022); *Lisa Y.*, 570 F. Supp. 3d at 1002-03.

Moreover, "[u]nconstitutional for-cause removal challenges alone . . . will not automatically serve to invalidate the ALJ's decision." *Nudelman*, 2022 WL 101213, at *13; *see Jean P.*, 2022 WL 1505797, at *14 ("The fact a party has been impacted by a decision of an agency that suffers from an alleged unconstitutional removal restriction does not mean that the actions or decisions of the agency are necessarily void or that the party is entitled to judicial relief."). "A party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party . . . ." *Kaufmann*, 32 F.4th at 849; *see Andre J. B.*, 2022 WL 2308961, at *12.

Like the claimant in *Jean P.*, Plaintiff "argues that the harm she suffered was not receiving a constitutionally valid hearing, adjudication, or decision from either the ALJ or the Appeals Council." 2022 WL 1505797, at *14; *see* Pl.'s Reply at 11-12, ECF No. 24. But also like the claimant in *Jean P.*, Plaintiff "has not shown a clear connection" between § 902(a)(3)'s limitation on removal and "the ALJ's and Appeals Council's decision denying her benefits." 2022 WL 1505797, at *14. The harm Plaintiff alleges is essentially the same as her absence-of-authority argument, namely, all the actions taken by the ALJ and the Appeals Council are void because of the removal restriction itself. As the Commissioner points out, "[u]nder Plaintiff's theory, she should be awarded a rehearing

for no reason other than [§] 902(a)(3)'s existence, whether or not she can show that it's restriction on the President's ability to remove the Commissioner had any effect on the ALJ's actual decision on her benefits claim."  Comm'r's Mem. in Supp. at 14-15.  Absent "any causal link between the unconstitutional removal protection and the denial of [Plaintiff's] application," *Andre J. B.*, 2022 WL 2308961, at *12, Plaintiff "has not demonstrated that the removal provision caused compensable harm," *Jean P.*, 2022 WL 1505797, at *14; *see Kauffman*, 32 F.4th at 850 ("Nothing in the record suggests any link whatsoever between the removal provision and Claimant's case."); *Hernandez*, 2022 WL 2286801, at *4 ("Accordingly, because Plaintiff has not sufficiently alleged any actual, particularized harm and tied it to the unconstitutional statutory removal restriction in the Social Security Act, the Court declines to remand the case for a new hearing on this basis." (footnote omitted)); *see also, e.g.*, *Alice T.*, 2021 WL 5302141, at *18; *Lisa Y.*, 570 F. Supp. 3d at 1003-04; *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 (W.D. N.C. Oct. 28, 2021); *cf. Collins*, 141 S. Ct. at 1802 ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block.  But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense.  Presidential control does not show itself in all, or even all important, regulation.  When an agency decision would not capture a President's attention, his removal authority could not make a

difference—and so no injunction should issue." (Kagan, J., concurring) (quotation and citations omitted)).

As Plaintiff has not met her burden to show that the removal protection in § 902(a)(3) affected the determination of her claim, the Court recommends that Plaintiff's motion be denied, and the Commissioner's motion be granted, as to Plaintiff's request for remand based on the argument that § 902(a)(3) violates separation of powers..[2]

## IV. DISABILITY CLAIM

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

---

[2] Accordingly, the Court declines to consider the other arguments advanced by the Commissioner, namely, harmless error, the de facto officer doctrine, the rule of necessity, and broad prudential considerations. *See* Comm'r's Mem. in Supp. at 8-21; *see, e.g.*, *Hernandez*, 2022 WL 2286801, at *4 n.1; *Jean P.*, 2022 WL 1505797, at *15 n.7; *Alice T.*, 2021 WL 5302141, at *19.

The ALJ determines disability according to a five-step, sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  In general, the burden of proving the existence of disability lies with the claimant.  20 C.F.R. §§ 404.1512(a), 416.912(a).

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law.  *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)).  The Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted); *see, e.g.*, *Chismarich*, 888 F.3d at 979 (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it."  *Boettcher v. Astrue*, 652 F.3d 860, 863

(8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Here, Plaintiff argues that the ALJ's determination that she was not disabled suffered from two substantive errors: (1) the ALJ erred by finding that Plaintiff "could perform her past occupation as generally performed because the position was actually a composite job"; and (2) the ALJ's dispositive findings were "improperly based on an unresolved conflict with the Dictionary of Occupational Titles." Pl.'s Mem. in Supp. at 3. Plaintiff's arguments are of "specific legal nature," and Plaintiff does not challenge the evidentiary sufficiency of the ALJ's factual findings in her motion. *See id*. at 2. Thus, the Court does not recount the medical or other evidence in the record. Instead, the Court provides a brief overview of the ALJ's determination and recounts relevant portions of the hearing transcript and the determination when discussing Plaintiff's arguments. *See Andre J. B.*, 2022 WL 2308961, at *12.

### B. ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining disability for DIB and SSI.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 17, 2018.  Tr. 17-18.  At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder and generalized anxiety disorder.  Tr. 18.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app.1.  Tr. 18-20.  The ALJ then found that Plaintiff had the residual functional capacity[3] "to perform a range of work at all levels of exertion, but with the following non-exertional limitations: she may perform simple, routine tasks; and she may work in an environment with routine, predictable changes."  Tr. 20-21.

At step four, the ALJ found that Plaintiff had past relevant work experience as a "cashier II."  Tr. 26.  The ALJ noted that this finding was "generally consistent with the evidence overall, including the written analysis prepared by the impartial vocational expert . . . as amended by his testimony to the effect that [Plaintiff] has past relevant work experience as a cashier II, . . . light level of exertion, unskilled level, as generally performed."  *Id*.  The ALJ also noted that this finding was "generally consistent with [Plaintiff's] own reports and earning records [as Plaintiff] acknowledged in writing that

---

[3] A claimant's "residual functional capacity is the most [s]he can do despite h[er] limitations."  20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1).  "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations."  *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted).

she worked from May 2007 to November 2007 at a Super America store as a cashier." *Id*.

The ALJ concluded that "[i]n comparing [Plaintiff's] residual functional capacity with the

physical and mental demands of the job of cashier II, . . . [Plaintiff] is able to perform it as

generally performed, according to the Dictionary of Occupational Titles." Tr. 27. Thus,

the ALJ concluded that because Plaintiff was capable of performing her past relevant work

as a cashier II, she was not under disability. *Id*.

### C. Composite Job

Plaintiff argues that the ALJ erred at step four of his analysis by finding that Plaintiff

"could perform her past occupation as generally performed because the position was

actually a composite job." Pl.'s Mem. in Supp. at 3. Plaintiff argues that her prior position

at Super America involved several duties beyond those listed for "cashier" in the

Dictionary of Occupational Titles ("*DOT*"). Pl.'s Mem. in Supp. at 5. Plaintiff contends

that because her position was a composite job, the ALJ should have analyzed whether

Plaintiff could perform the cashier job "as actually performed," not "as generally

performed in the national economy." Pl.'s Mem. in Supp. at 4. The Commissioner argues

that "it was Plaintiff['s] burden to prove she could no longer work as a cashier, not the

ALJ's burden to establish that Plaintiff could." Def.'s Mem. in Supp. at 23, ECF No. 23.

The Commissioner further argues that Plaintiff's past relevant work as a cashier was not a

composite job and the ALJ therefore analyzed Plaintiff's ability to perform her past

relevant work properly. Def.'s Mem. in Supp. at 24.

"Past relevant work is work that [a claimant has] done within the past 15 years, that

was substantial gainful activity, and that lasted long enough for [the claimant] to learn to

do it." 20 C.F.R. § 404.1560(b)(1).  An ALJ may use a vocational expert to offer evidence about the physical and mental requirements of a claimant's past relevant work and about whether a hypothetical person with the claimant's residual functional capacity could perform that work, either as the claimant actually performed it or as generally performed in the national economy.  *Id.* (b)(2).  An ALJ will classify a job based on occupational descriptions given in the *DOT*.  *Id.*; *Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation As Generally Performed*, SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. 1982).

But "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the *DOT*. Such situations will be evaluated according to the particular facts of each individual case."  SSR 82-61, 1982 WL 31387 at *2 (S.S.A. 1982); *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019) ("A composite job involves 'significant elements of two or more occupations . . . ."); *Past Relevant Work (PRW) as the Claimant Performed It*, SSA Program Operations Manual (POMS) DI 25005.020.  "A composite job does not have a *DOT* counterpart, so [an ALJ shall] not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'"  POMS DI 25005.020.  If past relevant work was a composite job, the ALJ should instead "find the claimant capable of performing the composite job only if he or she can perform all parts of the job."  *Id*.  Failure to do so "constitutes an error of law and grounds for remand." *Blackwell v. Colvin*, No. 4:14 CV 252 JMB, 2015 WL 4132000, at *17 (E.D. Mo. July 8, 2015) (reversible error when an ALJ failed to recognize that past relevant work was composite and made up of jobs at two different exertional levels); *McAbee v. Colvin*, No.

15-5097, 2016 WL 3983734, at *2-3 (W.D. Ark. July 26, 2016) (ALJ did not even mention the work "composite" in his past relevant work discussion).

In this case, the ALJ adopted the vocational expert's opinion that Plaintiff's past relevant work at Super America could be appropriately categorized as "cashier II," *DOT* § 211.462-101, light level of exertion, unskilled skill level, which duties include:

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. . . . May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale . . . . May receive money, make change, and cash checks for sales personnel on same floor . . . . May make change for patrons at places of amusement other than gambling establishments . . . .

*DOT* § 211.462-101; *see also* Tr. 26. Consequently, the ALJ found that Plaintiff was capable of performing her past relevant work at the job of cashier as generally performed in the national economy. Tr. 27. The ALJ did not analyze Plaintiff's past job as a composite job.

14

Citing *Sloan*, the Commissioner argues that Plaintiff's cashier job at Super America was not a composite job because Plaintiff performed all the functions of the "cashier II" job, even if she also performed functions of a second job. *See* Def.'s Mem. in Supp. at 24 (citing *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019)). In *Sloan*, the Eighth Circuit Court of Appeals held that a job is not necessarily a composite job just because it entails responsibilities beyond those outlined in the *DOT* definition of a single occupation. *Sloan*, 933 F.3d at 950. A job "may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." *Id*.; *see also* SSR 82-61, 1982 WL 31387 at *2 (S.S.A. 1982). An inability to perform these excessive functional demands does not render a claimant disabled under the Act. *Sloan*, 933 F.3d at 950.

In *Sloan*, the court considered whether substantial evidence supported the ALJ's determination that the claimant's past relevant work as a receptionist was not a composite job. 933 F.3d at 950. The court highlighted that the claimant's testimony about her primary job responsibilities included "'going through notes' and managing 'incoming calls from members and routing them' to the appropriate person." *Id*. The court found that "[t]he *DOT*'s description of a receptionist's duties matches [the claimant's] statements about her primary responsibilities. *Id*.; *see also* DOT § 237.367-038 (describing duties of "receptionist" as receiving calls and directing callers to destination; recording name, time of call, nature of business, and person called upon; and typing memos, correspondence, reports, and other documents, among others). Based on the claimant's description of her primary duties, the court found that the claimant's additional responsibilities, such as

15

walking the merchandise floor and retrieving items on the floor, "were not the focus of her job," and that she performed all the duties of a receptionist. *Sloan*, 933 F.3d at 950-51. Therefore, substantial evidence supported the ALJ classifying the claimant's past relevant work as a receptionist. *Id*.

Here, in contrast, it is not clear which of Plaintiff's responsibilities were "the focus of her job" and which were "additional responsibilities." *See id*. While Plaintiff self-reported that her job title was a "Cashier," it is unclear what Plaintiff's primary responsibilities were. *See* Tr. 265, 289. Plaintiff's work history reports indicate that her job duties, or what she "d[id] all day," included not only "Cashier," but also "Stock, Mop, Sweep, Bakery Stock." Tr. 265, 289. She reported stooping 2 hours per day, kneeling 2-3 hours per day, and handling, grabbing, or grasping big objects 2-3 hours per day. *Id*. She noted that she used machines, tools, and equipment, lifted and carried "Shipment Boxes [and] Dollies of Stacks of Boxes," and lifted 10 pounds frequently (from 1/3 to 2/3 of the workday). *Id*.

Based upon this record, unlike the court in *Sloan*, this Court cannot conclude that the *DOT*'s description of a "cashier II's" duties matches Plaintiff's "primary responsibilities" at Super America. Plaintiff simply described one of her duties as "Cashier," but did not explain the tasks she did as a cashier, such as receiving cash, making change, operating a cash register, or other similar duties for the "cashier II" position in *DOT* § 211.462-101; *contra Sloan*, 933 F.3d at 950. The record here is simply insufficient for this Court to conclude that Plaintiff "performed *all* duties of a ['cashier II']" or that her cashiering-related responsibilities were "her primary responsibilities." *See id*. at 950-51

(emphasis added).  Similarly, this Court cannot conclude that the other tasks Plaintiff described, like stocking, mopping, and sweeping, were simply "additional responsibilities" and "not the focus of her job." *See id*.  Again, Plaintiff reported stooping 2 hours per day, kneeling 2-3 hours per day, and handling, grabbing, or grasping big objects 2-3 hours per day.  Tr. 265, 289.  She further reported that she used machines, tools, and equipment, lifted and carried "Shipment Boxes [and] Dollies of Stacks of Boxes," and lifted 10 pounds frequently (from 1/3 to 2/3 of the workday).  *Id*.  Thus, while unclear from the record, it is entirely possible that one of the primary responsibilities of Plaintiff's job was stocking and cleaning.  The ALJ cannot simply excise the stocking and cleaning components of Plaintiff's job from his analysis, declare Plaintiff's past work to be "cashier II," and ask the vocational expert whether Plaintiff could return to work as "cashier II" given the limitations set forth in the hypothetical question. *See Arriaga v. Astrue*, No. 8:11-CV-261, 2012 WL 4105091, at *18 (D. Neb. Sept. 18, 2012).  Therefore, under *Sloan*, there is not sufficient evidence to conclude that Plaintiff's job at Super America was not a composite job.  This Court finds that the ALJ's conclusion that Plaintiff could perform her past relevant work as "cashier II" is not supported by substantial evidence.  Thus, this Court recommends that the ALJ's determination that Plaintiff is capable of performing past relevant work as "cashier II" be vacated as to step four.  This Court further recommends that the matter be remanded to the ALJ for further proceedings regarding Plaintiff's ability to perform her past relevant work, or, in the alternative, for further consideration of Plaintiff's ability, in light of all relevant factors, to make an adjustment to other work available in the national economy.

17

While the Commissioner correctly notes that it is Plaintiff's burden to prove that she can no longer perform her past relevant work, it is still the ALJ's "duty to fully investigate and make explicit findings as to the physical and mental demands of [Plaintiff's] past relevant work and to compare that with what [Plaintiff] herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work." *See Young v. Astrue*, 702 F.3d 489, 491-92 (8th Cir. 2013); *see also Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991) ("The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. . . . A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to h[er] past work."); *Kirby v. Sullivan*, 923 F.2d 1323, 1326 (8th Cir. 1991). The Eighth Circuit has repeatedly stated that an ALJ "may discharge this duty by referring to the specific job descriptions in the Dictionary of Occupational Titles that are associated with the claimant's past work." *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999). But "it is impossible for the ALJ to determine whether Plaintiff has the [residual functional capacity] to perform the requirements of h[er] past relevant work if the ALJ incorrectly identifies that past relevant work." *See Dixon v. Berryhill*, No. 2:16-CV-02186, 2018 WL 1135561, at *2 (W.D. Ark. Mar. 2, 2018) (finding that the ALJ erred by failing to analyze whether the claimant's prior job was a composite job and relying on the vocational expert's facially incorrect *DOT* designation). An ALJ's failure to fulfill the obligation to develop the facts fully and clearly *requires* reversal. *Groeper*, 932 F.2d at 1238 (emphasis added) (citing *Kirby*, 923 F.2d at 1327).

18

Perhaps there are multiple *DOT* designations needed to explain the main duties of Plaintiff's past relevant work as a "Cashier" at Super America, and the position was therefore a composite job. As such, the ALJ would need to determine whether Plaintiff can fulfill the duties of her prior work as actually performed. *See Sloan*, 933 F.3d at 950. Or, perhaps there is a *DOT* designation other than "cashier II" that better encompasses all the tasks and responsibilities that Plaintiff described in her work history reports. Another possibility is that "cashier II" is actually the appropriate *DOT* designation for Plaintiff's past relevant work at Super America. Regardless, it was the ALJ's "duty to fully investigate and make explicit findings as to the physical and mental demands of [Plaintiff's] past relevant work," *See Young*, 702 F.3d at 491-92, and the ALJ failed to do so here. The ALJ's decision is devoid of any effort to analyze whether Plaintiff's prior job was a composite job or whether the *DOT* designation for "cashier II" was the appropriate designation based on the physical and mental demands of Plaintiff's past relevant work. *See Dixon*, 2018 WL 1135561, at *2.

It may very well be that on remand and after further proceedings, the ALJ finds that "cashier II" is the appropriate *DOT* designation for Plaintiff's past relevant work at Super America, and that it is not a composite job. But, without an explanation as to whether Plaintiff's prior job was a composite job or whether the *DOT* designation for "cashier II" was the appropriate designation based on the physical and mental demands of Plaintiff's past relevant work, the Court is left to speculate as whether Plaintiff is able to perform her past relevant work. This the Court cannot do. *See Encino Motorcars, LLC v. Navarro*,

579 U.S. 211, 224 (2016) ("It is not the role of the courts to speculate on reasons that might have supported an agency's decision.").

In sum, the Court finds that the ALJ's conclusion that Plaintiff could perform her past relevant work as "cashier II" is not supported by substantial evidence. Thus, this Court recommends that Plaintiff's motion be granted as to her request for remand based on the argument that the ALJ erred in analyzing her past relevant work at step four, and that the matter be remanded to the ALJ for further proceedings regarding Plaintiff's ability to perform her past relevant work, or, in the alternative, for further consideration of Plaintiff's ability, in light of all relevant factors, to make an adjustment to other work available in the national economy. The Court further recommends that on remand, the ALJ obtain additional testimony from Plaintiff regarding her job duties at Super America and from a vocational expert to address whether the job of "cashier II" or any other jobs can be performed within the limitations of the hypothetical and Plaintiff's residual functional capacity.

### D. Reasoning Level

Lastly, Plaintiff argues that the "cashier II" job identified by the vocational expert exceeds the limitations in Plaintiff's residual functional capacity because the limitations presented in the vocational expert's hypothetical (specifically, "simple, routine tasks") are more consistent with jobs with a reasoning level of one or two as opposed to level three, which is the reasoning level for "cashier II." Pl.'s Mem. in Supp. at 6-10. Plaintiff argues that the case must be remanded to resolve the reasoning level conflict because the vocational expert did not explain the conflict between his testimony and the information

20

provided in the *DOT*. Pl.'s Mem. in Supp. at 9; Pl's Reply at 4-5. The Commissioner concedes that the *DOT* description of "cashier II" requires a reasoning level of three. Def.'s Mem. in Supp. at 25. The Commissioner, however, argues that consistent with Eighth Circuit precedent, "[t]he failure to address any potential inconsistency between the [residual functional capacity's] limitation to simple, routine, repetitive work and the *DOT*'s requirement of level three reasoning does not require a remand." Def.'s Mem. in Supp. at 25-26 (citing *Welsh v. Colvin*, 765 F.3d 926, 929-30 (8th Cir. 2014); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007)).

"Each occupation in the *DOT* is coded with a reasoning development level, which corresponds to the ability to follow instructions and solve problems that is required for satisfactory job performance." *Hulsev v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010). The *DOT* defines reasoning level in terms of general educational development, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and is ordinarily "obtained in elementary school, high school, or college," but "may be obtained from experience and self-study." *Id*. Reasoning levels one through three require a claimant to:

> LEVEL 1 – Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2- Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

> LEVEL 3 – Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id*.  Here, the ALJ found that Plaintiff had the residual functional capacity "to perform . . . simple, routine tasks . . . in an environment with routine, predictable changes."  Tr. 20-21. The ALJ included these limitations in a hypothetical question to the vocational expert, and the vocational expert testified that a person so limited could work as "cashier II."  Tr. 62. Plaintiff argues that, by definition, jobs with a reasoning level of three, like "cashier II," are inconsistent with a limitation a hypothetical limiting work to "simple and routine tasks."  Pl.'s Mem. in Supp. at 8.

This Court disagrees.  The law in this Circuit is clear – any potential inconsistency between a reasoning level of three and the ability to follow only simple instructions on non-detailed tasks is not a conflict."  *Filbert v. Colvin*, No. 4:14-cv-00209-JAR, 2015 WL 1474873, at *11 (E.D. Mo. Mar. 31, 2015) (citing *Renfrow*, 496 F.3d at 921 (citing *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) ("[E]xpert's opinion that claimant who was limited to following 'simple, concrete instructions' could work as cashier was not inconsistent with [*DOT*] description of cashier as requiring level three reasoning.")); *see also Welsh*, 765 F.3d a 930 ("The failure to address any potential inconsistency between the [residual functional capacity's] limitation to simple, routine, repetitive work and the *DOT*'s requirement of level three reasoning does not require a remand.").

As Plaintiff argues, an ALJ has a duty to make sufficient inquiry to determine whether a conflict exists between a vocational expert's testimony and the information

provided in the *DOT*, and if there is an "apparent unresolved conflict," to "elicit a reasonable explanation for the conflict and resolve the conflict by determining if the explanation given by the vocational expert provides a basis for relying on the [vocational expert's] testimony rather than on the *DOT* information." *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (citations omitted).  An ALJ's failure to ask a vocational expert about possible conflicts is harmless, however, where no such conflict appears to exist. *Renfrow*, 496 F.3d at 921.  While the ALJ here did not ask the vocational expert about conflicts with the *DOT*, the failure to do so was harmless because any potential inconsistency between the *DOT*'s level three reasoning and the ability to follow only simple instructions and perform simple, routine work is not a conflict that an ALJ must resolve.  *See id.*; *see also Hillier*, 486 at 367; *see also Welsh*, 765 F.3d at 930.

Plaintiff also argues that this Court should not rely on *Welsh* because the court in that case found that there was no unresolved conflict with the *DOT* on the specific facts of the case, where the ALJ questioned the vocational expert about any apparent inconsistencies with the relevant *DOT* job description and the ALJ explained his decision to credit the vocational expert's testimony.  Pl.'s Reply at 4-5.  Courts within the Eighth Circuit, however, have relied on *Welsh* for the proposition that "an ability to follow simple instructions and perform non-detailed tasks is not inconsistent with level 3 reasoning, [so] there is no need to remand . . . for resolution of any perceived conflict."  *See, e.g., Chismarich v. Berryhill*, No. 4:15-CV-1575 CDP, 2017 WL 476408, at *5 (E.D. Mo. Feb. 6, 2017) ("The Eighth Circuit has repeatedly held that any potential inconsistency between a reasoning level of 3 and the ability to follow only simple instructions and perform non-

detailed tasks is not a conflict that an ALJ must resolve."); *Bolar v. Colvin*, No. 3:15-CV-00386-JTR, 2016 WL 6900793, at *3 (E.D. Ark. Nov. 22, 2016) (finding that the claimant's "argument, that the level three reasoning of the jobs identified by the [vocational expert] required more than the [residual functional capacity] presented, is not supported by the law of the Eighth Circuit.")

In sum, the vocational expert's testimony was not in conflict with the *DOT*, and the ALJ was not required to go further in identifying or addressing any potential inconsistency. As such, this Court recommends that Plaintiff's motion be denied as to her request for remand based on the argument that the "cashier II" job identified by the vocational expert exceeds the ALJ's limitation to simple, routine work.

Accordingly, the Court recommends that Plaintiff's motion be granted in part and denied in part; the Commissioner's motion be granted in part and denied in part; the ALJ's determination that Plaintiff is capable of performing past relevant work as "cashier II" be vacated as to step four; and this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

[*Continued on next page.*]

## VIII. RECOMMENDATION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 19, be **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 22, be **GRANTED IN PART** and **DENIED IN PART**.

3. The ALJ's determination that Plaintiff is capable of performing past relevant work as "cashier II" be **VACATED** as to step four.

4. This matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date: July ___28___, 2022                                    _____*s/ Tony N. Leung*_____
                                                            Tony N. Leung
                                                            United States Magistrate Judge
                                                            District of Minnesota

                                                            *Michele Z. v. Kijakazi*
                                                            Case No. 21-cv-661 (KMM/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).